IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GUILLERMO MELENDEZ-GUZMAN,**<br>**Petitioner,**<br>**v.**<br>**J.L. JAMISON, *et al.*,**<br>**Respondents.** | **CIVIL ACTION NO. 26-7556** |

**MEMORANDUM OPINION**

**Rufe, J.** **October 5, 2026**

Petitioner Guillermo Melendez-Guzman brings this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, challenging his detention by the Department of Homeland Security ("DHS") as unlawful. Petitioner argues that his detention violates the substantive and procedural portions of the Fifth Amendment Due Process Clause, 8 U.S.C. § 1226 and its implementing regulations, and the *Accardi* doctrine. The government opposes the Petition, but admits that this matter "presents substantially similar factual and legal issues as those recently decided by this Court in *Sagbay v. Jamison*"—in which the Court granted habeas relief to a detained noncitizen—and concedes that it does "not contend that this case is distinguishable from *Sagbay*."[1] Despite the government's acquiescence (or belief) that all such cases are decided similarly, this Court will conduct its usual individualized analysis of the facts and the law to make its ruling.

[1] Opp'n 1 [Doc. No. 3] (citing *Sagbay v. Jamison*, No. 26-cv-7265, 2026 WL 2875765 (E.D. Pa. Sept. 24, 2026)).

## I. Background

Petitioner is a national and citizen of El Salvador.[2] Petitioner entered the United States on an unknown date and has resided in Philadelphia since approximately 2021.[3] While living in the United States, and prior to his arrest, Petitioner has had no interactions with immigration officials and has never filed any immigration applications.[4]

On the morning of September 23, 2026, Petitioner was arrested by Immigration and Customs Enforcement ("ICE") agents while driving a truck on his way to work.[5] The ICE agents initially encountered Petitioner while "conducting vehicle inspections" in Quakertown, Pennsylvania, during which time they determined that he was not lawfully present in the United States.[6] The agents arrested Petitioner and detained him at an ICE field office and, later, the Philadelphia Federal Detention Center, where he remains in custody.[7] Petitioner's wife and three coworkers were also in the truck, though ICE did not detain Petitioner's wife, who, like Petitioner, does not have legal status.[8]

Petitioner was not presented with an administrative warrant at the time of his arrest.[9] The government has offered a Form I-200 administrative warrant for the arrest of Petitioner dated September 23, 2026, but there is no indication that the warrant was created prior to Petitioner's

---

[2] *Id.* at 4.

[3] *See* Pet. ¶ 18 [Doc. No. 1]. Petitioner also attempted to enter the United States on September 1, 3, 8, and 11, 2021, but was encountered and turned away by U.S. Border Patrol near Hidalgo, Texas each time. Opp'n 4; Opp'n Ex. B, Form I-213 [Doc. No. 3-2]. The parties do not provide information on the circumstances of these encounters.

[4] Pet. ¶ 19.

[5] *Id.* ¶ 20.

[6] Opp'n 4.

[7] Pet. ¶ 21.

[8] *Id.* ¶ 20.

[9] *Id.* ¶ 19.

arrest.[10] The government makes no argument that it was, stating only that the warrant was issued sometime on the "same day."[11] The warrant bases the probable cause for Petitioner's removability on biometric identification and statements allegedly made by Petitioner after his apprehension, none of which existed before Petitioner was arrested.[12]

Once detained, Petitioner requested review of DHS's custody determination by an immigration judge,[13] and a bond hearing is now scheduled for October 15, 2026.[14] On September 30, 2026, Petitioner filed the instant Petition for a Writ of Habeas Corpus.[15] The same day, this Court entered an order directing the government to show cause as to why the Petition should not be granted, setting a hearing for October 5, 2026, and prohibiting Petitioner's transfer from this Court's jurisdiction.[16] On October 2, 2026, the parties "stipulate[d] and agree[d] that the petition may properly be decided on the papers" and "request[ed] that the Court cancel the hearing scheduled for October 5."[17] The Court entered an order granting the parties' request.[18] Having received the government's response and Petitioner's reply thereto, the Court now evaluates the Petition.

---

[10] Opp'n Ex. C, Form I-200 [Doc. No. 3-3].

[11] Opp'n 4.

[12] Opp'n Ex. C.

[13] Opp'n 5; Opp'n Ex. D, Form I-286 [Doc. No. 3-4].

[14] Opp'n 5; Opp'n Ex. E, Notice of Custody Redetermination Hearing [Doc. No. 3-5].

[15] Pet.

[16] 9/30/26 Order [Doc. No. 2].

[17] Stipulation [Doc. No. 4].

[18] 10/2/26 Order [Doc. No. 6].

## II. LEGAL STANDARD

Federal district courts are authorized to grant a § 2241 petition where Petitioner is detained "in violation of the Constitution or laws or treaties of the United States."[19] The petitioner has the burden of showing that the detention violates the Constitution of the United States or federal law.[20]

## III. DISCUSSION

Petitioner argues that his detention violates the Due Process Clause because it occurred without a warrant or an individualized evaluation of the need to detain him.

As a preliminary matter, the Court finds that it has jurisdiction to review Petitioner's claims. 8 U.S.C. § 1226(e) does not preclude review of a constitutional challenge to the process afforded before detaining a noncitizen pursuant to § 1226(a),[21] under which the government claims Petitioner is lawfully held, nor do any other jurisdiction-stripping provisions of the INA bar review of the Petition.[22]

---

[19] 28 U.S.C. § 2241(c)(3); *Demore v. Kim*, 538 U.S. 510, 523 (2003) ("[T]he Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." (citations and quotation marks omitted)).

[20] 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

[21] *Demore*, 538 U.S. at 516-17 (holding that § 1226(e) does not bar review of a constitutional challenge to "the statutory framework that permits . . . detention"); *Jennings v. Rodriguez*, 583 U.S. 281, 295-96 (plurality opinion) (holding that a challenge to "the extent of the Government's detention authority" falls outside the scope of § 1226(e)).

[22] 8 U.S.C. § 1252(g), which bars review of "any cause or claim . . . arising from the decision or action of the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter," does not preclude judicial review of the instant Petition. Petitioner challenges his detention without a pre-deprivation individualized custody determination or opportunity to be heard, rather than the commencement of removal proceedings.

8 U.S.C. § 1252(a)(2)(B)(ii) does not apply to this case. Section 1252(a)(2)(B)(ii) bars review of only a "decision or action of the Attorney General or the Secretary of Homeland Security" that is committed to those officials' discretion. Authority under the detention statute is not a matter of discretion, *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001), so § 1252(a)(2)(B)(ii) does not preclude judicial consideration of the Petition.

Finally, § 1252(b)(9) "does not strip jurisdiction when aliens seek relief that courts cannot meaningfully provide alongside review of a final order of removal." *E.O.H.C. v. Secretary of United States Department of Homeland Security*, 950 F.3d 177, 186 (3d Cir. 2020). Petitioner's argument that he is unlawfully detained does not challenge his removal.

### A. Exhaustion

Generally, petitioners seeking habeas relief under § 2241 are required to exhaust administrative remedies before the habeas petition can be heard.[23] However, as the statute contains "no [explicit] exhaustion requirement,"[24] exhaustion is a matter of "sound judicial discretion."[25] A § 2241 habeas petitioner need not exhaust administrative remedies if exhaustion would be futile or if the issue presented involves only statutory construction.[26]

The government claims that Petitioner cannot seek relief through a habeas petition filed in this Court because he is scheduled for a bond hearing before an immigration judge.[27] But Petitioner alleges that he is *currently* being deprived of liberty unlawfully, so administrative processes such as a bond hearing that may become available in the future would be futile in remedying Petitioner's alleged present and ongoing constitutional deprivation.[28] Furthermore, it is not clear that such administrative remedies are genuinely available to Petitioner at all. The

---

[23] *Pinet v. Holt*, 316 F. App'x 169, 171 (3d Cir. 2009) (citing *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996)).

[24] *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000).

[25] *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) ("[W]here Congress has not clearly required exhaustion, sound judicial discretion governs.").

[26] *Duvall v. Elwood*, 336 F.3d 228, 234 (3d Cir. 2003) ("[W]here exhaustion is not clearly mandated by statute, a futility exception exists."); *Vasquez v. Strada*, 684 F.3d 431, 433-34 (3d Cir. 2012) ("[A] prisoner need not exhaust administrative remedies where the issue presented involves only statutory construction . . . ."); *see also Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988) ("Exhaustion is not required if administrative remedies would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable injury.").

[27] Opp'n 8; *see also* 8 C.F.R. § 236.1(d) (implementing 8 U.S.C. § 1226 and allowing for post-detention appeals from custody decisions).

[28] *Dos Reis v. McShane*, No. 26-cv-3775, 2026 WL 1746649, at *3 (E.D. Pa. June 17, 2026) ("A later bond hearing does not necessarily cure the alleged constitutional deprivation that preceded it."); *see also Gopie v. Lyons*, No. 25-05229, 2025 WL 3167130, at *3 (E.D.N.Y. Nov. 13, 2025) ("[A] bond hearing before an immigration judge is a 're-determination' of custody—it assumes that a valid custody determination was made in the first instance.")); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025) (explaining that ICE's "failure to conduct any kind of individualized assessment *before* detaining" an individual meant that "any post-deprivation review by an immigration judge would be inadequate"); *Dzehtisarou v. Mullin*, No. 26-cv-5060, 2026 WL 2211392, at *2 (E.D. Pa. July 31, 2026) (holding that petitioner detained under § 1226(a) need not exhaust post-deprivation administrative remedies to challenge constitutionality of initial custody determination); *De Los Santos Medina v. Jamison*, No. 26-cv-6800, 2026 WL 2742071, at *3 (E.D. Pa. Sep. 16, 2026) (same); *Sagbay*, 2026 WL 2875765, at *3 (same).

government has affirmatively chosen to detain Petitioner at a facility that "does not facilitate bond hearings in any capacity on behalf of ICE detainees."[29] Yet, "[a] remedy that exists only if ICE elects to make it accessible is not an available remedy Petitioner must exhaust."[30] Accordingly, the Court, exercising its discretion, finds that Petitioner is not required to exhaust administrative remedies before the Petition can be heard.

**B. Procedural Due Process Claim**

Petitioner challenges his arrest without a warrant and without an individualized pre-detention custody determination under the Due Process Clause of the Fifth Amendment. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."[31] Furthermore, "[f]reedom from imprisonment—from government custody, detention, or other forms of government restraint—lies at the heart of the liberty that [the Due Process] Clause protects."[32] The Due Process Clause applies to Petitioner's detention, and "the question remains what process is due."[33]

DHS must make an individualized pre-detention custody determination in order for its arrest of a noncitizen under § 1226(a) to satisfy due process.[34] Specifically, an initial custody

[29] Opp'n 5.

[30] *Dos Reis*, 2026 WL 1746649, at *3; *cf. Ross v. Blake*, 578 U.S. 632, 642 (2016) (finding that, in the context of the PLRA, a prisoner "need not exhaust unavailable" remedies); *Gowen v. Winfield*, 130 F.4th 162, 176 (4th Cir. 2025) (concluding that, in the context of the PLRA, an "administrative remedy is considered unavailable 'if a prisoner, through no fault of his own, was prevented from availing himself of it.'").

[31] *Zadvydas*, 533 U.S. at 693.

[32] *Id.* at 690.

[33] *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

[34] *Sagbay*, 2026 WL 2875765, at *3; *De Los Santos Medina*, 2026 WL 2742071 at *4; *Dos Reis*, 2026 WL 1746649, at *4; *Dzehtisarou*, 2026 WL 2211392, at *4; *Hernandez v. Blanche*, No. 26-cv-6195, 2026 WL 2569475, at *4-5 (E.D. Pa. Aug. 31, 2026); *see also Singh*, 2026 WL 690013, at *6; *Lopez Benitez*, 795 F. Supp. 3d at 493.

decision under § 1226(a) "requires an individualized determination as to whether the noncitizen is a danger to property or persons and is likely to appear for any future proceeding."[35]

The record does not reflect an individualized assessment prior to Petitioner's detention. The Notice of Custody Determination given to Petitioner states only: "Pursuant to the authority contained in section 236 of the Immigration and Nationality Act . . . I have determined that, pending a final administrative determination in your case, you will be [d]etained by the Department of Homeland Security."[36] The government claims that it did conduct an individualized review by "determining that [Petitioner] was present in the United States without lawful status."[37] But an individual's immigration status or removability, on its own, is insufficient to justify a custody determination. "Relying solely on Petitioner's immigration status amounts to a per se determination that comports not with 1226(a), but with the government's desired policy of detention."[38]

To determine whether the procedures used by the government in detaining Petitioner satisfy the requirements of the Due Process Clause, the Court must analyze three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional substitute procedural requirement would entail.[39]

---

[35] *Dos Reis*, 2026 WL 1746649, at *4 (quoting *Lopez Benitez*, 795 F. Supp. 3d at 493) (citation modified); *see also Dzehtisarou*, 2026 WL 2211392, at *4; *De Los Santos Medina*, 2026 WL 2742071 at *4; *Sagbay*, 2026 WL 2875765, at *3.

[36] Opp'n Ex. D.

[37] Opp'n 12.

[38] *Dzehtisarou*, 2026 WL 2211392, at *5 (quoting *Dos Reis*, 2026 WL 1746649, at *4) (citation modified); *see also De Los Santos Medina*, 2026 WL 2742071 at *5; *Sagbay*, 2026 WL 2875765, at *4.

[39] *Mathews v. Eldrige*, 424 U.S. 319, 334 (1976). These factors apply in the context of noncitizens taken into civil immigration custody. *Buele Morocho v. Warden Phila. FDC*, Nos. 16-1150, 26-1454, 2026 WL 2546223, at *9 (3d Cir. Aug. 28, 2026); *Gayle v. Warden Monmouth Cnty. Corr. Inst.*, 12 F.4th 321, 331-32 (3d Cir. 2021).

The Court will balance these factors with respect to Petitioner's detention to assess whether Petitioner received constitutionally sufficient process.

First, Petitioner has a "constitutionally protected interest in avoiding physical restraint."[40] Indeed, Petitioner's "interest in being free from physical detention" is "the most elemental of liberty interests."[41] Second, the lack of an individualized custody determination creates a substantial risk of erroneous deprivation of Petitioner's liberty. [42] DHS detained Petitioner pursuant to a general policy goal rather than conducting an assessment to determine whether there were any reasons that would "explain why detention, rather than release on conditions, is necessary for *this* Petitioner."[43] Therefore, the first two factors weigh in Petitioner's favor.

Third, the government has a legitimate interest in "ensuring the appearance of aliens at future immigration proceedings" and "[p]reventing danger to the community."[44] But "those interests can be served through making individualized determinations about noncitizens it seeks to detain."[45] The government failed to make such a determination before detaining Petitioner. Further, the government does not now argue that Petitioner is a danger to the community or a flight risk. Indeed, the government's own records demonstrate that Petitioner has no criminal history.[46] Thus, the government's interest in Petitioner's detention without an individualized

---

[40] *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997).

[41] *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).

[42] *See Buele Morocho*, 2026 WL 2546223, at *9 ("[T]he absence of an opportunity for a neutral decisionmaker to assess whether Petitioners are dangerous or flight risks presents a high risk of erroneously depriving Petitioners of their liberty interest." (citations omitted)).

[43] *Dos Reis*, 2026 WL 1746649, at *5.

[44] *Zadvydas*, 553 U.S. at 690.

[45] *Hernandez*, 2026 WL 2569475, at *5; *see also Dos Reis*, 2026 WL 1746649, at *5 (holding that the government's legitimate interests in "ensuring appearance at removal proceedings and protecting the community . . . support detention only when the Government connects them to the individual detainee").

[46] Opp'n Ex. B.

custody determination—weighed against Petitioner's interests in freedom from physical restraint and avoiding the risk of erroneous deprivation—is weak.[47]

The *Mathews* factors, on balance, weigh in favor of finding a due process violation.[48] The further requirement of an individualized pre-deprivation custody determination does not impose an undue burden on the government.[49] Accordingly, Petitioner's due process rights were violated by his detention without a pre-detention individualized custody assessment.[50]

### C. Violation of 8 U.S.C. § 1226(a)

Petitioner's arrest without an administrative warrant issued at the time is also a violation of § 1226(a), the statute under which the government claims he was detained. Section 1226(a) provides that "*[o]n a warrant issued by the Attorney General*, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."[51] Section 1226(a) "is not even triggered unless an arrest warrant is issued. . . . If the alien has not been arrested on a warrant, then the subsequent provisions giving the Attorney General

---

[47] *See Buele Morocho*, 2026 WL 2546223, at *10 ([T]he government's legitimate interest in preventing release of dangerous noncitizens and those who might fail to appear at future hearings does not outweigh the other two factors here, particularly when these non-criminal individuals were detained absent evidence that either is dangerous or a flight risk . . . ." (citation omitted)).

[48] *See id.* at *8-10 (finding due process violations where Petitioners' interest in avoiding physical restraint and the risk of erroneous deprivation from "the absence of an opportunity for a neutral decisionmaker to assess whether Petitioners are dangerous or a flight risk" outweighed "the Government's legitimate interest in preventing the release of dangerous noncitizens and those who might fail to appear at future hearings" (citations omitted)).

[49] *Dos Reis*, 2026 WL 1746649, at *5; *see also C.W.M. v. Hermosillo*, No. 25-cv-2688, 2026 WL 183587, at *5 (W.D. Wash. Jan. 23, 2026) ("[A]lthough requiring a pre-detention process in this case would present some administrative burden, given the high risk of erroneous deprivation and the fundamental liberty interest at stake, providing effectively no pre-detention process—as ICE did here—is constitutionally deficient.").

[50] As this Court has explained, "the Third Circuit's recent holding in *Buele Morocho* that mandatory detention without a bond hearing under 8 U.S.C. § 1225(b)(2)(A) violates due process is consistent with the Court's present holding that detention under § 1226(a) requires an individualized determination of whether Petitioner is a danger to the community or a flight risk." *Sagbay*, 2026 WL 2875765, at *5 n.47 (citing *Buele Morocho*, 2026 WL 2546223, at *8-10).

[51] 8 U.S.C. § 1226(a) (emphasis added).

discretion to detain or release 'the arrested alien' are likewise not triggered."[52] Here, the record demonstrates that the administrative warrant for Petitioner's arrest was not issued until he was already in ICE custody. Petitioner was not presented with a warrant at the time of his arrest, and there is no indication in the record to suggest that the warrant was issued prior to the arrest.[53] Moreover, neither Petitioner's identity nor his immigration status was known to the agents who apprehended him until his arrest.[54]

While the government asserts that it arrested and detained Petitioner pursuant to 8 U.S.C. § 1226(a), despite having no prior-issued warrant, it further claims that it is permitted to conduct warrantless arrests of this kind under 8 U.S.C. § 1357(a)(2).[55] The government is mistaken. Section 1357(a)(2) provides agents with the narrow authority to arrest a noncitizen without a warrant when an agent "has reason to believe" that the noncitizen has violated certain immigration laws "*and is likely to escape before a warrant can be obtained* for his arrest."[56] But, as noted, there is no evidence indicating that the ICE agents had any reason to believe that

[52] *Sagbay*, 2026 WL 2875765, at *5 (quoting *Florida v. United States*, 660 F. Supp. 3d 1239, 1276 (N.D. Fla. 2023)); *see also Chogglo Chafla v. Scott*, 804 F. Supp. 3d 247, 264 (D. Me. 2025) ("[A]bsent a warrant a noncitizen may *not* be arrested and detained under section 1226(a).").

[53] Pet. ¶ 19; *see* Opp'n Ex. C.

[54] Opp'n 4; Opp'n Ex. B.

[55] Opp'n 11. The government contends that "Petitioner's claims regarding the legality of his arrest are also not cognizable in habeas" because "such claims may only be brought through a motion to suppress in immigration court, or, if cognizable, as a civil rights claim for damages." *Id.* at 10 (citation omitted). The government's assertion is incorrect, and the cases it cites are inapposite. The government cites *Oliva-Ramos v. Attorney General*, 694 F. 3d 259 (3d. Cir. 2012), but the Third Circuit in that case "grappled with whether the exclusionary rule should apply during removal proceedings," while Petitioner here "does not rely on the Fourth Amendment, and the issue is the legality of Petitioner's arrest, not exclusion of evidence." *Tabora-Brizuela v. Mullin*, No. 26-cv-7010, 2026 WL 2908095, at *3 (E.D. Pa. Sept. 28, 2026). The government also cites *Par v. Jamison*, No. 26-cv-3504, 2026 WL 1603299 (E.D. Pa. June 4, 2026), but in that case, Judge Perez "noted at the outset of her analysis that the fact the petitioner there was subject to a final order of removal 'materially alter[s] the legal posture of this case,'" and "[w]hen presented with facts similar to those here, Judge Perez ordered release." *Tabora-Brizuela*, 2026 WL 2908095, at *3 (quoting *Par*, 2026 WL 1603299, at *1) (citing *Hernandez*, 2026 WL 2569475).

[56] 8 U.S.C. § 1357(a)(2) (emphasis added).

Petitioner was a flight risk, and the government does not claim otherwise.[57] Therefore, because Petitioner's detention did not occur either "[o]n a warrant issued by the Attorney General" or with "reason to believe that [Petitioner] . . . [was] likely to escape before a warrant [could] be obtained for his arrest," it was unlawful under both § 1226(a) and § 1357(a)(2), in addition to violating procedural due process.

### D. Remedy

The proper remedy for Petitioner's unlawful detention is release. "Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release."[58] A post-detention bond hearing is an inadequate substitute for the pre-detention individualized assessment that due process requires before making the "initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause."[59]

## IV. CONCLUSION

For the reasons stated herein, the Petition for a Writ of Habeas Corpus will be granted, and the Court will order Petitioner's immediate release.[60] An order will be entered.

---

[57] *See Tabora-Brizuela*, 2026 WL 2908095, at *3 ("[Respondents] do not attempt to explain how the facts satisfy the requirements of [§ 1357(a)(2)] here, nor could they.").

[58] *Munaf v. Geren*, 553 U.S. 674, 693 (2008).

[59] *Cruz-Reyes v. Bondi*, 818 F. Supp. 3d 875, 884 (S.D. Texas 2026).

[60] Petitioner also challenges his detention as a violation of the substantive component of the Fifth Amendment Due Process Clause and the *Accardi* doctrine. Because Petitioner is entitled to habeas relief based on violations of procedural due process and § 1226(a), the Court does not reach these claims.